IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES ESTEP,

        Petitioner,

  v

STEVEN CAMBRA, JR et al, Warden,

        Respondent.

No C 02-0348 VRW

ORDER

This case is before the court for consideration of 1) the merits of James Estep's petition for writ of habeas corpus concerning his sentencing for his 1997 conviction for failing to register as a sex offender pursuant to California Penal Code section 290(g)(2) and 2) petitioner's motion for appointment of counsel.

The trial court found that petitioner had four convictions of lewd and lascivious conduct with a child under the age of 14, which gave petitioner four strikes. The court further denied petitioner's motion to reduce his conviction, for

1  failing to register as a sex offender, to a misdemeanor and to
2  strike his prior four strikes.  The court sentenced petitioner to
3  life in prison with a minimum term of twenty-five years.  For the
4  following reasons, the petition for writ of habeas corpus is
5  DENIED, and the motion for appointment of counsel is GRANTED.

I

The factual summary of this case, as follows, is contained in the opinion of the California court of appeal, which is presumed correct pursuant to 28 USC section 2254(e)(1).

> Defendant stipulated that he was required as a convicted felony sex offender to register his residence with the local police.  He testified that, in 1983, he pled guilty to four counts of child molestation.
>
> Defendant registered the address of 72 North Fifth Street, No 16, with the San Jose Police in April 1987.  He notified them in person of the change of address to 175 North Eighth Street, No 4, in October 1987.  In September 1991 defendant notified the police in person of another change of address to 454 Reynolds Circle.  The police provided defendant with a permanent registration card reflecting his current address.
>
> The last registered address the police had for defendant was 464 Reynolds Circle, where defendant lived in a warehouse rented by Bill Baker Enterprises.  Defendant worked for Bill Baker, maintaining video games.  The business and defendant moved from that location in July 1993.  On July 29, 1993, defendant notified the Department of Motor Vehicles (DMV) of his new address in San Jose, 46 South Seventh Street, No 5.
>
> On March 12, 1996, the San Jose Police conducted a routine DMV records check that revealed defendant's new address, 46 South Seventh Street, No 5.  On July 10, 1996, the police went to this new address and arrested defendant for failing to register.  Defendant told the arresting officer, Patrick Nation, the following.  He did not notify the Police Department that he had moved.  He could not remember if he had notified them.  He was sure he had gone down and notified them.
>
> Defendant testified at trial that he mailed the police department a form showing his change of address.  He had no documentation of this letter.  He realized he did not

> receive a new registration card in three years at the new address. He did nothing about it. Defendant said that he lied about registering in person when he was arrested because he panicked when the police arrived.

Doc # 17, Ex C at 2-3.

At the sentencing hearing, the court denied defendant's motions to reduce his current conviction to a misdemeanor and to strike his four prior strikes. The sentencing court reviewed the defendant's probation report, the circumstances of the defendant's arrest, several psychological assessments, the defendant's personal history of poverty and sexual abuse and the testimony of two neighbors who testified that the defendant was with minor boys on several occasions over a two to three year period. Doc # 17 Ex C at 10-13.

According to petitioner, a material and substantial issue at sentencing was the circumstance of petitioner's arrest. When arrested on July 10, 1996, petitioner was with a ten your old boy identified as "Willy," who he had been babysitting alone. The police officer noted that petitioner's trouser zipper was unzipped, although no allegations of molestation were asserted or directly suggested at trial or sentencing.

The California court of appeal discussed the sentencing of the petitioner, the evidence on which the sentencing court relied, and ultimately the decision of the court to deny defendant's motion to strike his prior convictions.

> Defendant argues that the trial court's sentencing rulings relied on evidence that was speculative and misleading. The trial court applied the wrong standard by focusing 'only on the improper speculative evidence.' Had the court considered the relevant factors, it would have stricken defendant's prior convictions.

3

> We do not understand defendant's real complaint to be about the nature of the information that the trial court relied on. Defendant has not denied that when he was arrested he was babysitting a 10-year-old boy who had spent the night with him and whose father he had befriended through work. Defendant's opening brief asserts, 'the evidence relied upon the court, while accurate in its, was clearly...speculative and unreliable with respect to the conclusion drawn.'
>
> What defendant objects to is that 'the court implicitedly [sic] concluded [defendant] had been molesting W.' The court concluded that defendant 'must have engaged in some sort of inappropriate conduct with W.' The trial court found that defendant 'was probably guilty of additional and far more serious crimes.'
>
> The short answer to this argument is that the court did not reach these speculative conclusions. Instead, as quoted above, the court acknowledged there was no allegation of molest. What bothered the court was defendant's questionable judgment, not inherently improper behavior. Had defendant not molested children 14 years earlier, it might be innocuous that he was babysitting for a friend. What bothered the court was the potential for a repeat offense, not its actuality. It appears defendant is criticizing the trial court for conclusions it did not draw.

Doc # 17 Ex C, 14-16

After a two day hearing on June 27 and July 18, 1997, the defendant was sentenced to a state prison term of twenty-five years to life. Petitioner is currently serving this sentence at the Mule Creek State Prison in Ione, California.

Petitioner filed a timely appeal of his conviction which was denied in part and granted in part by the California court of appeal, sixth appellate district, on February 18, 1999. Doc # 17 Ex C. Petition for review was denied on April 28, 1999 by the California Supreme Court. Doc # 17 Ex D, E.

Petitioner then filed a petition for writ of habeas corpus in the California court of appeal on or about July 9, 1999. The petition was denied, and petitioner was allowed to refile in

4

Santa Clara superior court. Petitioner filed a writ of habeas corpus in the superior court, which was denied on January 13, 2000. Doc # 17 Ex G, H. Petitioner appealed the decision to the California court of appeal and the California Supreme Court. Both courts denied the petition. Doc # 17 Ex I, J.

On January 22, 2002, petitioner filed the instant petition for writ of habeas corpus in this court pursuant to 28 USC § 2254. Petitioner alleges that the judgment rendered against him was in violation of his (1) Sixth Amendment right to competent counsel; (2) Fourteenth Amendment right to due process due to the suppression of material evidence pertaining to his sentence; and (3) Fourteenth Amendment right to due process and fundamental fairness related to the trial court taking into account unreliable and speculative evidence at sentencing. Petitioner seeks a writ of habeas corpus vacating his sentence and remanding the case to superior court for a new sentencing hearing. Briefing on the petition was completed on January 13, 2005, with the filing of petitioner's reply memorandum.

II

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 USC § 2254(a). A state court's determination is reviewed for unreasonableness, not error. See Williams v Taylor, 529 US 362 (2000); Anderson v Alameida, 2005 US App LEXIS 1646 (9th Cir 2005). Even if a ruling is an unreasonable application of law,

5

the application must have a "substantial and injurious effect" in order to justify overturning a conviction. <u>Penry v Johnson</u>, 532 US 782, 795 (2001). A federal court may grant habeas relief if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [United States] Supreme Court" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d).

A

Turning to petitioner's Sixth Amendment claim that he was denied his right to effective representation, petitioner argues that his trial counsel did not adequately represent him by failing to locate and interview Willy, the boy found with petitioner at the time of his arrest. According to petitioner, because of this failure, the trial court speculated that petitioner had molested Willy and, thus, sentenced Estep to a prison term of twenty-five years to life. Doc # 3.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the right secured by the Sixth Amendment. <u>Strickland v Washington</u>, 466 US 668, 686 (1984). To demonstrate ineffective assistance of counsel, a defendant must satisfy a two-prong test. First, he must show that counsel's representation fell below an objective standard of reasonableness and, second, he must show that there was prejudice as a result. Id at 687-92. With respect to the first prong, judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Id</u>, <u>see also</u>

6

<u>Sanders v Ratelle</u>, 21 F 3d 1446, 1456 (9th Cir 1994).  Counsel's conduct must be evaluated for purposes of the performance standard of <u>Strickland</u> at the time of counsel's conduct.  <u>Lowry v Lewis</u>, 21 F 3d 344, 346 (9th Cir 1994).  With respect to the second prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 US 668 at 694; <u>see also</u> <u>Sanders</u>, 21 F 3d at 1461. The petitioner has failed to show that his attorney's failure to interview Willy violated his Sixth Amendment right to counsel.

Petitioner may have a colorable argument that his counsel failed to act effectively when he failed to interview the boy found with the petitioner at the time of the arrest.  Although the court will generally presume that counsel acted appropriately, <u>Strickland</u>, 466 US 668 at 694, counsel has a responsibility to investigate in order to make reasonable decisions as to strategy. <u>Id</u> at 691.  Without interviewing Willy, petitioner's counsel may well have lacked the information to ascertain whether Willy's testimony would assist or harm the defense.  Yet even if petitioner could show that his attorney's failure to interview Willy fell below an objective standard of reasonableness, petitioner fails to meet the second prong necessary to prevail on his Sixth Amendment claim.

Pursuant to the second prong, petitioner has failed to show that, but for his counsel's error in failing to interview Willy, the sentencing proceeding would have been different. Although petitioner argues that Willy's presence at the time of the

7

arrest was a critical element in the trial court sentence, there is significant evidence to the contrary. Although the trial court spent some time reviewing the circumstances of the petitioner's arrest, specifically articulating concern that petitioner would put himself in a position similar to the circumstances surrounding his initial sex offenses, i e babysitting a young boy, the trial court clearly stated that it did not assume that petitioner had committed acts of molestation. Doc #17 Exh C, 16. Instead, the trial court declined to exercise its extraordinary power to strike prior offenses based on the facts of the arrest: the petitioner exercised bad judgment given the circumstances of his previous convictions. Thus, even if Willy had testified that petitioner had not molested him, it appears such testimony would have had no impact on the sentence. The court defers to, and agrees with, the state appellate court's findings related to the interpretation of the trial court's reasoning at sentencing. See <u>Williams v. Rhodes</u>, 354 F3d 1101, 1108 (9th Cir 2004) ("On habeas review, state appellate court findings – including those that interpret unclear or ambiguous trial court rulings – are entitled to the same presumption of correctness that we afford trial court findings"). The trial court did not conclude that petitioner had molested Willy therefore Willy's testimony would not have been relevant to the sentence imposed.

**B**

Second, petitioner claims that his conviction resulted from the violation of his Fourteenth Amendment right when the prosecution allegedly failed to disclose the statements Willy made

8

to the police at the time of the petitioner's arrest.  Petitioner argues that this failure to comply with <u>Brady v. Maryland</u> constituted prejudicial error in the petitioner's sentence.  373 US 83 (1963).  The petitioner's argument fails.

It is unclear from the record whether Willy's statements to the police were disclosed to defense counsel.  <u>See</u> Doc # 3 Ex A at 2.  Assuming the prosecutor did not disclose the statements, petitioner has failed to show that <u>Brady v Maryland</u> applies.  Withheld material is not considered under the framework of <u>Brady</u> unless it is both favorable to the defense and material to either punishment or guilt.  <u>Id</u> at 87.  Evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>United States v Bagley</u>, 473 US 667, 682 (1985) (plurality opinion).

In this case, Willy's testimony was not material to the sentencing decision.  As discussed above, the trial court firmly asserted that there was no allegation of the petitioner molesting Willy therefore any evidence supporting the position that the petitioner did not molest Willy would have had virtually no impact on the trial court's sentence.  In light of this, and the supporting findings of the state appellate court, <u>see</u> Doc # 17 Ex C, the petitioner has failed to demonstrate that such disclosures would have made any appreciable impact on the sentence.

C

Last, petitioner argues that his Fourteenth Amendment right to a fundamentally fair sentencing hearing was violated

9

because the trial court based its denial of defendant's motion to strike his prior convictions on the speculative and unreliable evidence that petitioner had molested Willy.  In order to prevail, petitioner bears the burden of demonstrating improper reliance by showing that the information was false or unreliable and that the information was the basis for the sentence.  <u>United States v Lewis</u>, 880 F2d 243, 246 (9th Cir 1989).  In order to demonstrate reliance, petitioner must cite to the record to show that the court based its sentence on improper evidence.  <u>Id</u>.

Again, petitioner's argument is grounded in the position that the trial court based its sentencing decision on the belief that petitioner molested Willy.  As asserted above, this was not the basis of the trial court's decision.  Thus, petitioner has failed to demonstrate that the court based its sentence on an assertion of molestation.

### III

Petitioner has requested that the court appoint counsel to represent him, *nunc pro tunc*, in his writ of habeas corpus.  Due to the substantial and complex legal and factual questions that provided the basis of the petitioner's writ, the motion is GRANTED.

The decision to appoint counsel is within the discretion of the court.  <u>See</u> <u>Chaney v Lewis</u>, 801 F2d 1191, 1196 (9th Cir 1986).  The court may appoint counsel in exceptional cases where the case turns on complex procedural, factual or legal questions and/or when the petitioner is not in a position to investigate crucial or complicated facts.

//

1    The habeas petition in question required the assistance of
2 counsel in order to present and argue adequately the constitutional
3 issues raised by petitioner.  Given the financial indigence of the
4 petitioner, justice requires this court to GRANT petitioner's
5 motion to appoint Alex Green as counsel, *nunc pro tunc*.

7                                    IV
8    Based on the foregoing analysis of the legal issues
9 raised, the writ of habeas corpus is DENIED and the petition is
10 DISMISSED.  The clerk is directed to close the file and terminate
11 all pending motions.

13           IT IS SO ORDERED.



16                                    **VAUGHN R WALKER**
17                                    **UNITED STATES DISTRICT CHIEF JUDGE**